JUDGE CROTTY

13 CIV 5897

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

RECEIVED
AUG 21 2013
U.S.D.C. S.D. N.Y.
CASHIERS

KENNETH D. PASKAR, and FRIENDS
OF LAGUARDIA AIRPORT, INC.,

     Plaintiffs,

v.

THE CITY OF NEW YORK, and NEW
YORK CITY DEPARTMENT OF
SANITATION,

     Defendants.

Civil No. _____

---

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

### I. INTRODUCTION

1.     This is a Citizen Suit brought under §§ 7002(a)(1)(A) of the Resource Conservation and Recovery Act ("RCRA"). 42 U.S.C. §§ 6972(a)(1)(A). Plaintiffs Kenneth D. Paskar and Friends of LaGuardia Airport, Inc. ("FOLA") (collectively, "Plaintiffs") seek a declaratory judgment, injunctive relief, the imposition of civil penalties, and the award of costs, including attorneys' and expert witness' fees, for the failure of the City of New York and the New York City Department of Sanitation (collectively "Defendants") to comply with the express provisions of 40 C.F.R. § 258.10. 40 C.F.R. § 258.10 provides that prior to construction of a solid waste facility that is within five statute miles of an airport, the owner of the solid waste facility must notify the Federal Aviation Administration ("FAA") and the operator of the airport and provide a demonstration that the solid waste facility will not pose a bird hazard to aircraft.

2.     In the alternative, Plaintiffs seek a declaratory judgment, injunctive relief, the imposition of civil penalties, and the award of costs, including attorneys' and expert witness' fees, for Defendants' failure to comply with the express provisions of 40 C.F.R. § 257.3-8.

II.     **JURISDICTION AND VENUE**

3.      This Court has subject matter jurisdiction pursuant to 42 U.S.C. § 6972(a).

4.      On September 15, 2012, Plaintiffs served a notice of violation on the Administrator of the United States Environmental Protection Agency ("USEPA"), the Regional Administrator of USEPA Region 2, the New York State Department of Environmental Conservation ("NYSDEC"), and Defendants, pursuant to 42 U.S.C. § 6972(b)(1) regarding the proposed North Shore Marine Transfer Station (the "NSMTS"). Exhibit A.

5.      More than 60 days have passed since the notices were served and neither USEPA nor NYSDEC has commenced and is diligently prosecuting a civil or criminal action in a court of the United States or a State to require compliance with the regulation.

6.      Venue is proper in the United States District Court for the Southern District of New York pursuant to 42 U.S.C. § 6972(a) because the violations and/or the endangerment occurred in New York and the offices of the City of New York and the New York City Department of Sanitation are within the Southern District of New York.

III.    **PARTIES.**

A.      **Plaintiffs.**

7.      Plaintiff Kenneth D. Paskar is a resident of New York, New York, and is the President of Friends of LaGuardia Airport, Inc. and is an aeronautical user of LaGuardia Airport ("LaGuardia"). He is a licensed pilot and will use LaGuardia after the NSMTS is completed. Mr. Paskar has also used and intends to use LaGuardia as a passenger on aircraft.

8.      As President of FOLA, Mr. Paskar has directed FOLA's efforts toward eliminating aviation safety hazards that will be created at LaGuardia by the construction and operation of the NSMTS.

9.      Plaintiff Friends of LaGuardia Airport, Inc. is a not-for-profit corporation incorporated under New York law.  FOLA sues on behalf of aeronautical users of the affected airports and residents who live in proximity to the proposed marine transfer station.  FOLA was formed in 2010, to ensure, among other things, that the wildlife hazards presented by the construction of new solid waste facilities, such as the proposed marine transfer station, will be taken into account by the proper authorities in order to ensure that the airspace around New York City remains safe for all aeronautical users as well as for the people living in proximity to an airport.

10.     FOLA is concerned about any hazards to aviation safety in and around the New York City area that will have an impact on pilots, the flying public as well as the people living in proximity to an airport.

**B.      Defendants.**

11.     Defendant the City of New York (the "City"), is a municipal government and a political subdivision created pursuant to the laws of the State of New York.

12.     Defendant New York City Department of Sanitation is a department of the City.

12.     Upon information and belief, the Defendants are the owners and operators of the proposed NSMTS.

13.     Based on documents obtained from public sources, Defendants have received permits for the construction and operation of the NSMTS from the State of New York.

## IV.   STATEMENT OF FACTS

### A.   LaGuardia Airport

14.   LaGuardia is located in Queens, New York and is operated by the Port Authority of New York and New Jersey ("PANYNJ") pursuant to a lease from the City.

15.   LaGuardia is a public-use airport which is open to the public without prior permission and without restrictions within the physical capacities of its available facilities.

15.   Pursuant to the lease between PANYNJ and the City, all of the real estate and structures that comprise LaGuardia are owned by the City.

16.   Upon information and belief, an average of 1,002 aircraft operations take place every day at LaGuardia, the majority of them by turbojet aircraft.

17.   Pursuant to the lease between PANYNJ and the City, the City shall not erect or authorize the erection of any obstructions or hazards to air navigation to the extent prohibited by law or by rule or regulation of the FAA, upon or above the City's streets or other property belonging to the City which will project into the Horizontal Surfaces, Conical Surfaces, Primary Surfaces, Approach Surfaces or Transitional Surfaces or within the boundaries of the Runway Protection Zones.

### B.   North Shore Marine Transfer Station

18.   The Defendants are in the process of constructing the NSMTS which will be located in the College Point area of Queens, New York.  The NSMTS will be located approximately 2,000 feet from the end of LaGuardia's Runway 31.

19.   According to the Defendants' plans and documents that they have filed with various state and federal agencies the NSMTS will be ten stories high and cover two acres over Flushing Bay.  The NSMTS will operate up to 24 hours a day, six days a week.

20.     According to the Defendants' plans and documents that they have filed with various state and federal agencies, the NSMTS is a facility with practices that dispose of "putrescible wastes," as defined in 40 C.F.R. § 257.3-8(e)(7).

21.     According to the Defendants' plans and documents they have has filed with various state and federal agencies, the NSMTS will receive up to 3,672 tons of municipal solid waste per day. The waste will be transported to the NSMTS by garbage trucks that will not be fully "enclosed." These trucks will access the NSMTS by a ramp that is located next to Flushing Bay. While waiting on the ramp to access the NSMTS, the garbage contained in these trucks will be exposed and thus attract birds and other wildlife.

22.     According to the Defendants' plans and documents that they have filed with various state and federal agencies, the NSMTS will not control the odors created by its handling of solid waste through ventilation or by using filtration systems. Rather, it will rely upon negative air pressure and odor masking to inhibit the release of odors into the surrounding area.

23.     According to the Defendants' plans and documents that they have filed with various state and federal agencies, the NSMTS is a discrete area of land or an excavation that receives "household waste," as that term is defined in 40 C.F.R. § 258.2.

24.     According to the Defendants' plans and documents that they have filed with various state and federal agencies, the NSMTS is not a land application unit, surface impoundment, injection well, or waste pile, as those terms are defined under 40 C.F.R. § 257.2.

25.     Upon information and belief, containers loaded with solid waste will be stored outside the NSMTS while waiting to be loaded onto the barges that will transport the waste from the facility. These containers will be accessible to birds and other wildlife.

26.    Upon information and belief, the waste received by the NSMTS will not be processed via compaction, incineration, or similar manner.  Instead, the waste will be dumped into containers and then "tamped" to fit into the container.

27.    Upon information and belief, the Defendants knew or should have known that the NSMTS will project into the Horizontal Surfaces, Conical Surfaces, Primary Surfaces, Approach Surfaces or Transitional Surfaces or is within the boundaries of the Runway Protection Zones for LaGuardia.

28.    The NSMTS was the subject of a joint study by the United States Department of Agriculture ("USDA") and the FAA.  The FAA and USDA released a joint report on September 2, 2010 entitled *Evaluation of the North Shore Marine Transfer Station and Its Compatibility with Respect to Bird Strikes and Safe Air Operations at LaGuardia* (the "Panel Report").  The Panel Report concluded that the NSMTS as it was designed and operated is a bird hazard.

29.    40 C.F.R. § 257.3-8(e)(2) defines "bird hazard" as "an increase in the likelihood of bird/aircraft collisions that may cause damage to the aircraft or injury to its occupants."

29.    Because the Panel Report was performed under the Secretary of Transportation's General Authority under 49 U.S.C. § 301, the FAA, the USDA and/or the Department of Transportation cannot legally be bound to the opinions and conclusions contained in the Panel Report.

30.    Because the Panel Report was performed under the Secretary of Transportation's General Authority under 49 U.S.C. § 301, the Defendants cannot legally rely on the opinions and the conclusions contained in the Panel Report.

**V.    CLAIMS**

A.      **Violation of 40 C.F.R. § 258.10**

31.     Plaintiffs restate and reallege the foregoing allegations contained in ¶¶ 1 - 30.

32.     40 C.F.R. § 258.10 requires, *inter alia*:

   (a) Owners or operators of new MSWLF units, existing MSWLF units, and lateral expansions that are located within 10,000 feet (3,048 meters) of any airport runway end used by turbojet aircraft or within 5,000 feet (1,524 meters) of any airport runway end used by only piston-type aircraft must demonstrate that the units are designed and operated so that the MSWLF unit does not pose a bird hazard to aircraft;

   (b) Owners or operators proposing to site new MSWLF units and lateral expansions within a five-mile radius of any airport runway end used by turbojet or piston-type aircraft must notify the affected airport and the Federal Aviation Administration (FAA).

   (c) The owner or operator must place the demonstration in paragraph (a) of this section in the operating record and notify the State Director that it has been placed in the operating record.

33.     40 C.F.R. § 258.2 defines a "MSWLF unit" as a "discrete area of land or an excavation that receives household waste, and that is not a land application unit, surface impoundment, injection well, or waste pile, as those terms are defined under § 257.2 of this chapter."

34.     RCRA allows the commencement of a civil action against any person "who is alleged to be in violation of any…regulation…which has become effective pursuant to this chapter [Title 42 of the United States Code, Chapter 82, *Solid Waste Disposal*]."

35.     40 C.F.R. § 258.10 became effective pursuant to Title 42 of the United States Code, Chapter 82, *Solid Waste Disposal*.

36.     As described in ¶¶ 18 – 30 above, the proposed NSMTS is a MSWLF unit that is proposed to be located within 10,000 feet of an airport that uses turbojet or piston-type aircraft.

37.     As of the date of the filing of this Complaint, Defendants have failed to notify the FAA or LaGuardia regarding the NSTMS and have failed to "demonstrate that the [NSMTS is] designed and operated so that the [NSMTS] does not pose a bird hazard to aircraft."   Thus, Defendants are in clear violation of the requirements of 40 C.F.R. § 258.10.

**B.     Violation of 42 U.S.C. § 6945(a).**

38.     Plaintiffs restate and reallege the foregoing allegations contained in ¶¶ 1 – 30.

39.     In the event that NSMTS is not a "MSWLF unit" within the meaning of 40 C.F.R. § 258.2, then subpart 257 of Title 40 of the Code of Federal Regulations applies to it.

40.     40 C.F.R. § 257.3 states that "[s]olid waste disposal facilities or practices which violate any of the following criteria pose a reasonable probability of adverse effects on health or the environment."

41.     Subsection (c) of 40 C.F.R. § 257.3-8, entitled "Safety," states:

Bird hazards to aircraft. A facility or practice disposing of putrescible wastes that may attract birds and which occurs within 10,000 feet (3,048 meters) of any airport runway used by turbojet aircraft or within 5,000 feet (1,524 meters) of any airport runway used by only piston-type aircraft shall not pose a bird hazard to aircraft.

42.     Subsection (e) of 40 C.F.R. § 257.3-8, defines "airport" and "bird hazard" as:

(1) Airport means public-use airport open to the public without prior permission and without restrictions within the physical capacities of available facilities.

(2) Bird hazard means an increase in the likelihood of bird/aircraft collisions that may cause damage to the aircraft or injury to its occupants.

43.     40 C.F.R. §§ 257.3-1 – 257.3-8 contain certain criteria for classification of solid waste disposal facilities and practices.  Pursuant to 40 C.F.R. § 257.1, practices that fail to satisfy any of these criteria constitute open dumping and violate 42 U.S.C. § 6945(a).

44.     RCRA allows the commencement of a civil action against any person "who is alleged to be in violation of any…regulation…which has become effective pursuant to this chapter [Title 42 of the United States Code, Chapter 82, *Solid Waste Disposal*]."

45.     40 C.F.R. § 257.3-8(a) became effective pursuant to Title 42 of the United States Code, Chapter 82, *Solid Waste Disposal*.

46.     Because the NSMTS, as described in ¶¶ 18 – 30  (1) is a facility or practice disposing of putrescible wastes; (2) is less than 10,000 feet from the end of a runway at LaGuardia, an airport with both turbojet and piston-type operations; and (3) constitutes a bird hazard, it is in violation of 42 U.S.C. § 6945(a).

**C.      Violation of 49 U.S.C. § 44718(a)**

47.     Plaintiffs restate and reallege the foregoing allegations contained in ¶¶ 1 – 46.

48.     49 U.S.C. § 44718(a) states that "[b]y regulation or by order when necessary, the Secretary of Transportation shall require a person to give adequate public notice, in the form and way the Secretary prescribes, of the construction, alteration, establishment, or expansion, or the proposed construction, alteration, establishment, or expansion, of a structure or sanitary landfill when the notice will promote—(1) safety in air commerce; and (2) the efficient use and preservation of the navigable airspace and of airport traffic capacity at public-use airports."

49.     40 C.F.R. § 258.10 requires, *inter alia*, that owners and operators of solid waste facilities: (1) demonstrate that their solid waste facility will not be a bird hazard; and (2) provide notice to the FAA and the owner/operators of airports within a 5 mile radius of the construction and operation of the facility.

50.     The Defendants have not provided either a demonstration or notice pursuant to regulation, therefore they are in violation of 49 U.S.C. § 44718(a).

## VI.    RELIEF REQUESTED

Plaintiffs seek a judgment from this Court against Defendants as follows:

A.    An Order declaring that:

    1.    Defendants' proposed NSMTS is a "MSWLF unit" as that term is defined in 40 C.F.R. § 258.2.

    2.    Defendants have violated 40 C.F.R. § 258.10(a) by failing to provide a demonstration that the NSMTS is designed and will be operated so that it will not pose a bird hazard to aircraft;

    3.    Defendants have violated 40 C.F.R. § 258.10(c) by failing to include the demonstration required by 40 C.F.R. § 258.10(a) in the operating record;

    4.    Defendants have violated 40 C.F.R. § 258.10(b) by failing to provide proper notice to LaGuardia and the FAA of the construction of the NSMTS; and,

    5.    Defendants have violated 49 U.S.C. § 44718(a) by failing to give adequate public notice required by 40 C.F.R. § 258.10 of the construction of a structure that will be a detriment to safety in air commerce and the efficient use and preservation of the navigable airspace and of airport traffic capacity at public-use airports.

B.    An order directing Defendants to cease carrying out any further plans for construction or operation of the North Shore Marine Transfer Station until such time as Defendants comply with 40 C.F.R. § 258.10 and 49 U.S.C. § 44718.

C.    In the alternative to paragraph A, an Order declaring that:

1.  The North Shore Marine Transfer Station is facility or practice disposing of putrescible wastes that may attract birds and which occurs within 10,000 feet of an airport runway used by turbojet aircraft;

2.  The North Shore Marine Transfer Station poses a bird hazard to aircraft;

3.  As such, the North Shore Marine Transfer Station is in violation of 40 C.F.R. § 257.3-8.

4.  As a result of its violation of 40 C.F.R. § 257.3-8, the North Shore Marine Transfer Station is in violation of 42 U.S.C. § 6945(a) as well.

D.  In the alternative to paragraph B, an order directing Defendants to cease carrying out any further plans for construction or operation of the North Shore Marine Transfer Station due to its violation of 42 U.S.C. § 6945(a).

E.  All such penalties that the Court deems appropriate under 49 U.S.C. § 6928(a) and (g).

F.  Plaintiffs be awarded their costs, including reasonable attorneys' fees and expert witness fees, as provided for under RCRA, 42 U.S.C. § 6972(e), and the Equal Access to Justice Act, 28 U.S.C. § 2412(d)(1)(A), and other applicable laws; and

G.  Such other and further relief as the Court may deem just and proper.

Dated: New York, New York
      August 21, 2013

By:   _____

      Randy M. Mastro
      GIBSON DUNN & CRUTCHER LLP
      rmastro@gibsondunn.com
      200 Park Avenue
      New York, NY 10166-0193
      Telephone No.: (212) 351-4000
      Facsimile No.: (212) 351-4035

      Steven M. Taber* (*to be admitted pro hac vice*)
      TABER LAW GROUP
      staber@taberlaw.com
      13 Atlanta
      Irvine, California
      Telephone:    (949) 735-8217
      Facsimile:    (714) 707-4282

      *Attorneys for Plaintiffs Kenneth D. Paskar and*
      *Friends of LaGuardia Airport, Inc.*